OPINION
Defendant-appellant Scott C. Marcum [hereinafter appellant] appeals the January 24, 2001, Judgment Entry of the Stark County Court of Common Pleas which convicted and sentenced appellant on one count of attempt to commit aggravated arson, in violation of R.C. 2929.02 and 2923.02.[1]
The Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 27, 2000, defendant-appellant Scott C. Marcum was indicted on one count of attempt to commit aggravated arson, in violation of R.C. 2909.02 and 2923.02. Appellant was arraigned on September 29, 2000, at which time he entered a plea of not guilty.
On November 1, 2000, appellant withdrew his former plea of not guilty and entered a plea of guilty to the charge of attempt to commit aggravated arson. By Judgment Entry filed November 3, 2000, sentencing was deferred pending a presentence investigation. However, on December 11, 2000, appellant withdrew his guilty plea and the matter was set for trial.
The trial began on January 11, 2001, and concluded on January 12, 2001. The following facts were adduced at trial. Appellant and Kathy Copp [hereinafter Copp] were married October 23, 1999. Subsequently, Copp and appellant separated and were later divorced. The separation and divorce led to a series of incidents in which Copp claimed that appellant had harassed and threatened her. At one point, on June 18, 2000, appellant picked Copp up by the neck and threatened to kill her and himself.
After the couple divorced in late July of 2000, Copp claimed that appellant would repeatedly drive by her house and call her on the phone. Copp recorded one of those telephone calls and the tape of that conversation was played for the jury. In that phone conversation, appellant admitted carrying a gun and stated "I'll sit in fuckin' jail when you die. . . . Bye. You're dead. You're dead." (Exhibit 1A) Later in the phone conversation he threatened to punch her in the face.
Copp described other vandalism and harassment that occurred. Copp testified that on eight or ten occasions in August or September, 2000, her home was vandalized when someone smashed her potted plants, slashed her swimming pool liner, broke her French door off, and stole some decorative scarecrows.
In one such incident, on September 16, 2000, Copp was at a bar with a date. Appellant was there too and whispered to Copp that she was a whore. She returned home and went to sleep. She awoke the next morning to find that all of her outdoor plants had been smashed. Due to the acts of vandalism and violence, Copp hired a private detective and installed a surveillance camera and an alarm system.
The incident which gave rise to this conviction occurred on September 19, 2000. On that morning appellant awoke at about 4:30 A.M. and took a shower. After the shower, Copp heard her dog barking and heard a "scratching" noise. Copp opened her bathroom window and yelled at whoever might be there. Copp then went downstairs and noticed that the outside lights were not illuminated. Realizing that the lights should be illuminated, she hit the panic button on her alarm system. The alarm admitted a loud sound and automatically dialed the police.
When the police arrived they found that plants and glass were strewed around the front porch. The surveillance tape was retrieved and showed to the police officers. As the police officers and Copp spoke, they smelled gasoline or kerosene. One of the officers and Copp followed the odor to her back French doors which opened onto her deck. The officer discovered that the area outside the doors of the deck was covered in a liquid that was subsequently found to be kerosene. The kerosene was spread over her wood deck, the back of her house, over a gas grill which was connected to the house by a natural gas pipe line and over a wood bench that was part of the deck. Further, the bulbs in the floodlights that would have illuminated the area had been unscrewed. When asked by the officers who she thought might have done this, Copp identified appellant.
Some of the officers went to appellant's home which was about a mile away. One of the officers looked in a garage window. That officer saw a mask and gloves sitting on a car in the garage. The officer could smell kerosene. When an officer approached the house, appellant's mother let them inside and consented to a search of the house. Appellant was found in the garage. Appellant smelled of kerosene and kerosene was later found to be on his shorts and shoes. A can containing kerosene was found in the garage. A trail of what appeared to be kerosene led from appellant's car to the can in the garage. Further, the floor mat in appellant's car had kerosene on it. The gloves and mask were recovered and also contained kerosene.
The surveillance tape from that night was played for the jury. The tape showed someone unscrewing the outdoor lights and taking a scarecrow. The tape also showed that man smashing the plants in the front of the house. Copp identified the person committing those acts as appellant.
Further, Copp's sister testified that at around 1:00 A. M. on September 19, 2000, appellant called her and said there would be a death in the family on October 3. October 3rd is Copp's birthday.
On January 12, 2001, the jury returned a verdict of guilty to the offense of attempt to commit aggravated arson as charged in the indictment. A sentencing hearing was conducted January 16, 2001. By Judgment Entry filed January 24, 2001, appellant was found guilty and sentence was imposed. The trial court sentenced appellant to a stated term of incarceration of seven years.
It is from the January 24, 2001, Judgment Entry that appellant appeals, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE CONVICTION SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW, BECAUSE THERE WAS NO EVIDENCE AND NO SUGGESTION THAT APPELLANT ATTEMPTED TO IGNITE THE KEROSENE.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE U.S. OHIO CONSTITUTIONS WHEN IT ADMITTED PREJUDICIAL "OTHER ACT" EVIDENCE.
 I
In the first assignment of error, appellant argues that the evidence was insufficient to support his conviction for attempted aggravated arson because there was no evidence to suggest appellant attempted to ignite the kerosene that he spread at Copp's home. Appellant points out to this court that testimony showed that, when appellant was arrested, he did not have matches or a lighter on his person and that no such item was found at the scene or at the area in which the appellant and the kerosene can were subsequently seized.
Before we may review appellant's assignment of error, we must consider whether appellant preserved this issue for appellate review. "In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim. R. 29 motion for acquittal with the trial court."[2] State v. Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported, 1997 WL 590789, at 10; In accord, State v. Colon (June 21, 2001), Cuyahoga App. No. 06212001, unreported, 2001 WL 703872 (citing State v. Roe (1989), 41 Ohio St.3d 18,25.) Therefore, "[i]f a Crim. R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Id.; see also State v. Roe (1989), supra. (holding that when "appellant failed to timely file a Crim. R. 29 motion for acquittal, . . . and thus failed to preserve his arguments on appeal. . .").
In the case sub judice, appellant failed to make a motion for acquittal. Therefore, appellant did not preserve his right to appeal based upon insufficient evidence.
However, even if we were to consider appellant's assignment of error, we would find that it would fail. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus.
Appellant was charged with one count of attempted aggravated arson, in violation of R.C. 2909.02. Revised Code 2909.02 states, in relevant part: "No person, by means of fire or explosion, shall knowingly . . . [c]reate a substantial risk of serious physical harm to any person other than the offender. . . ." R.C. 2909.02(A)(1). Attempt is defined as follows:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
R.C. 2923.02
In State v. Woods, the Court held that an attempt occurs when a defendant does or fails to do an act which constitutes a substantialstep towards completing a course of conduct planned to culminate in the crime. State v Woods (1976), 48 Ohio St.2d 127, paragraph one of syllabus, overruled on other grounds, 438 U.S. 910. "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." Id. The State must show more than just intent or mere preparation to commit the crime. Id. at 131. "[T]he essential elements of a criminal attempt are the mems [sic] rea of purpose or knowledge and conduct directed toward the commission of the offense."Id. However, the conduct necessary for a criminal intent need not be the last proximate act prior to the consummation of the crime. Id. (citingState v. Farmer (1951), 156 Ohio St. 214, 216; Fox v. State (1878),34 Ohio St. 377.
Therefore, in the case sub judice, in order to find appellant guilty of attempted aggravated arson, the jury had to find that appellant took a substantial step towards his plan to knowingly cause a substantial risk of serious physical harm to Copp by means of fire or explosion.
Viewing the evidence in a light most favorable to the prosecution, we find a rational jury could have found that appellant's actions constituted a substantial step, strongly corroborative of his purpose to commit aggravated arson. Therefore, we find there was sufficient evidence to support his conviction. During the night and/or early morning hours of September 19, 2000, appellant attempted to conceal his identity and unscrewed floodlights which illuminated Copp's back deck and yard. Appellant concedes that he spread kerosene, a flammable accelerant, on the back of Copp's home, in the track outside of Copp's back doors, upon the wooden deck of Copp's home, and across a gas grill that was attached to the home via an active natural gas pipe. Copp testified that she occasionally used the grill and that the natural gas line was connected and working. Appellant was drawn to appellant's activity when she heard a "scratching" noise. We find appellant's conduct to be a substantial step toward the commission of arson and corroborative of appellant's intent to create a substantial risk of serious physical injury to Copp by fire or explosion. The spreading of the kerosene over the gas grill and natural gas line is especially corroborative of appellant's criminal intent to commit aggravated arson. Evidence showed that an explosion could have been caused if the kerosene had been ignited on the gas grill.
In conclusion, we find that the evidence adduced at trial was sufficient to support appellant's conviction for attempted aggravated arson. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant contends that he was denied a fair trial when evidence of other, prejudicial acts was erroneously admitted at trial, in contravention of Evid. R. 404(B) and R.C. 2945.59. Evidence was admitted showing that appellant had committed previous violent acts and made threats on other occasions.
The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173 . "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169,404 N.E.2d 144.
R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to the admissibility of evidence of other acts of wrongdoing. State v. Broom (1988), 40 Ohio St.3d 277. Revised Code 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evidence Rule 404(B) states the following:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Revised Code 2945.59 and Evid. R. 404(B) are to be strictly construed against the State and the admissibility of the "other acts" evidence.State v. Broom (1988), 40 Ohio St.3d 277, 282. However, if the other act does in fact "tend to show" by substantial proof any of those things enumerated in Evid. R. 404(B), such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act is admissible for such limited purpose. State v. Flonnory (1972), 31 Ohio St.2d 124, 126. The other act or acts offered as probative of the matter must themselves be temporally and circumstantially connected to the operative facts of the offense alleged. State v. Burson (1974), 38 Ohio St.2d 157, State v. Curry
(1975), 43 Ohio St.2d 66.
Testimony was admitted demonstrating that appellant had committed previous acts of violence and had made threats on previous occasions. For example, Copp testified that on June 18, 2000, appellant accosted Copp in a bar and grabbed one of her co-workers. Appellant was ejected from the bar as a result. Later that evening, when Copp returned home, appellant was waiting for her. He forced her onto the back deck and picked her up by the neck. He threatened to kill Copp and he also threatened to kill himself.
Copp said that after the couple divorced in late July, appellant would repeatedly drive by her house and he would repeatedly call her on the phone. Copp recorded one of those phone calls in mid-August, and the tape of that call was played for the jury. There was other vandalism and harassment. Copp testified that on eight or ten occasions appellant vandalized Copp's plants, slashed her swimming pool liner, broke her French door and took some decorative scarecrows.
On September 16, 2000, Copp was at a bar and so was appellant. He called her a whore. The following morning Copp noticed that all of her outdoor plants had been smashed.
Finally, Copp's sister testified that on September 19, appellant called her and said that there would be a death in the family on October 3rd. Copp's birthday was October 3rd.The testimony of "other acts" was admitted over the objections of appellant.[3] The trial court held that the testimony was admissible for a limited purpose to show motive, opportunity and intent, pursuant to Evid. R. 404(B). We agree.
The State was required to show that appellant attempted to knowingly create a substantial risk of serious physical harm to Copp. See R.C.2909.02 and 2923.02. Evidence of appellant's previous threats showed appellant's motive and intent to cause serious physical harm. Appellant's inability to accept the divorce and his anger towards his ex-wife were evident in his behavior and threats. Appellant's previous acts and threats to kill Copp were clear and timely evidence of his motive and intent in pouring kerosene on appellant's house, deck and gas grill.
Appellant argues further that the error in admitting the evidence of other acts was prejudicial and cannot be deemed harmless. First, as discussed above, we do not find the admission of the evidence to be error. Second, we note that any potential prejudice was minimized by the trial court's instruction to the jury, given on several occasions, that the "other acts" evidence not be used by the jury as evidence of appellant's character and that its use was to be limited to evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[4] TR 23, 145, 176, 261 and 449.
In conclusion, we find no error nor abuse of discretion in admitting the challenged testimony of other acts.
Appellant's second assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
Hon. Julie A. Edwards, P.J. Hon. William Hoffman, J. Hon. Sheila Farmer, J. concur.
[1] Two Notices of Appeal were filed in this case by two different attorneys. Thus, two separate case numbers were assigned. Subsequently, one of the attorneys withdrew and the cases were consolidated.
[2] The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case. Crim. R. 29(A).
[3] The objections were based upon a claim that the testimony was irrelevant to the pending charge.
[4] The trial court repeatedly gave the jury an instruction as exemplified by the following instruction:
 THE COURT: Members of the jury, once again the Court is going to give you the limiting instruction that it gave to you earlier with respect to other crimes, wrongs, or acts, which are not the specific acts for which the Defendant has been indicted.
 The Court hereby instructs you that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the Defendant in order to show that he acted in conformity with that character; and therefore you must not consider it for that purpose.
 However, such evidence may be introduced for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
TR. 176.